UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NINA BECKER,

    Plaintiff,                                        CASE NO.:

vs.

B & A MANUFACTURING COMPANY,
a Florida Profit Corporation,

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, NINA BECKER (hereinafter "BECKER"), by and through the undersigned Counsel, and sues the Defendant, B & A MANUFACTURING COMPANY, a Florida Profit Corporation (hereinafter "B&A"), and alleges the following:

### JURISDICTION AND VENUE

1. This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2. This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3. Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to the maintenance of this action have been met.

5. On December 23, 2019, Plaintiff BECKER timely filed a Charge of Discrimination with the Palm Beach County Office of Equal Opportunity, alleging violations of her civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. Chap. 760.01, et seq. ("FCRA") as amended, Title VII of the Civil Rights Act of 1964, ("Title VII") as amended, and Article VI, §§ 2-261—2-313 of the Palm Beach County Code of Ordinances (the Palm Beach County Equal Employment Ordinance) ("PBCEEO"), as amended. A copy of said Charge is attached hereto as **Exhibit "A."**

6. More than 180 days have passed since BECKER filed her Charge of Discrimination with the Palm Beach County Office of Equal Opportunity.

7. On November 19, 2020 the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since BECKER's filing of her Charge. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**

8. This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

9. Plaintiff BECKER is an individual who resided in Palm Beach County, Florida, during the time of her employment with B&A. At all times herein mentioned, BECKER was employed by B&A located at 3655 East Industrial Way, Riviera Beach, Florida 33404.

10. BECKER was and is a member of a group protected under Title VII, the FCRA, and the PBCEEO namely:

    a. She is a female.

  b. She complained about acts made unlawful by Title VII, the FCRA, and the PBCEEO and she thereafter suffered an adverse employment action.

11. B&A is duly authorized and licensed to do business in Palm Beach County, Florida. At all times material, B&A Manufacturing Company was an industry leader in the design, production, and marketing of carbide-tipped drill bits and accessory items, and had more than fifteen (15) employees. As such, B&A is an "employer" as defined by Title VII and the FCRA.

12. BECKER is fifty-three-year-old woman who first began working for B&A in December 2017 as the only female machinist.

13. BECKER was employed at B&A for one and one half (1.5) years working as a machinist and then later promoted to a CNC Machines Supervisor. By all accounts, she was recognized as hardworking, committed, and dedicated to her job and projects.

14. Between March 1 and March 8, 2019, BECKER was made aware by a fellow B&A employee, Martin Cotes, that the Plant Manager, Jose Antonio Lorenzo (hereinafter "Tony"), was making sexual comments regarding Ms. Becker.

15. On Friday, March 8, 2019, BECKER was sexually assaulted and battered by Tony at Island Jacks Restaurant during an outing with coworkers.

16. At the time of the assault, Tony had been drinking excessively and became upset when BECKER refused his sexual advances.

17. Tony drunkenly threatened to fire BECKER and then pushed her to the ground causing her injuries to her knee.

18. BECKER reported the incident to her immediate supervisor at that time, Tom Nemitz.

19. On Monday, March 11, 2019 Tom Nemitz reported the incident to the B&A owners, Norman and Carol Schmotzer, and Anna Renee, in Human Resources.

20. Norman and Carol Schmotzer and Anna Renee in Human Resources told Nemitz that the incident was a very sensitive issue and warned him to proceed with caution.

21. At or around the same time as Nemitz was advising the owners and Human Resources, BECKER was approached by the Sub Plant Manager, Angie Davine, who assured BECKER that the issue was being addressed, stating, "Don't worry. We got this."

22. Davine further sent a text message to Martin Coates about the incident, which Coates subsequently forwarded to BECKER.

23. Additionally, starting on that same day, Tony's brother, Carlos Lorenzo, who also was an employee at B&A and worked with BECKER, began calling her a "Bitch" every time BECKER walked close to him.

24. Also later on March 11, 2019, at the direction of B&A owner, Norman Schmotzer, Tony apologized to BECKER for his illegal and improper actions at Island Jacks Restaurant.

25. On or about, March 12, 2019 Tony's nephew, Eduardo "Anthony" Anzardo (hereinafter "Anzardo"), who also was an employee at B&A and worked with BECKER, approached BECKER and told her that Nemitz had better watch his back because Carlos Lorenzo was planning to hurt him. Anzardo added the statement, "Blood is thicker than water."

26. On or about March 29, 2019, Nemitz took a leave of absence due to health concerns. Norman Schotzer promoted BECKER to supervisor, the same position previously held by Tom Nemitz.

27. Notwithstanding the promotion, Tony continued to engage in a pattern of sexual harassment which consisted of lewd actions and comments directed at BECKER.

28. On one occasion, Tony approached BECKER telling her of his sexual fantasies, and when Tony asked if BECKER had any, she responded "No." Disregarding her response, Tony continued to tell BECKER a disgusting story of performing sex acts with someone.

29. On another occasion, Tony was facing BECKER discussing a job. Tony began to rub his crotch and BECKER quickly and shockingly stepped back. Upon seeing BECKER's reaction, Tony began to apologize for his actions.

30. On another occasion, Tony approached BECKER from behind when she was working on a machine. Tony pressed himself against her and placed a snack in front of her face and said "Here, let me feed you" in a grotesque voice.

31. On yet another occasion, Tony asked BECKER: "What kind of underwear are you wearing?". Anzardo was present at the Tony made this inappropriate, lewd, and unwelcomed comment and laughed.

32. On April 10, 2019, Anzardo once again approached BECKER and stated that she better be careful because "his family wanted to beat her ass".

33. Immediately following this threat, BECKER confronted Tony and asked him if the statement made by Anzardo was true to which Tony responded: "Yes, but don't worry I will take care of it."

34. On May 2, 2019, Tom Nemitz returned from his forced medical leave. Upon his return, the inappropriate, lewd, and unwelcomed words and actions by Tony briefly ceased as Tom Nemitz was now present for most interactions.

35. However, on May 13, 2019, after a dispute over his pay, Tom Nemitz left the company.

36. Shortly thereafter, the inappropriate, lewd, and unwelcomed words and actions by Tony resumed.

37. Specifically, on one occasion, BECKER was bending over the horizontal band saw. Tony approached BECKER from behind and in a soft, suggestive voice said, "Good Job."

38. On another occasion, during a cordial conversation, Tony showed BECKER a picture of his daughter on his telephone. As BECKER was looking at the photograph, Tony then scrolled over to the next image on his telephone which was a pornographic image of a man and a woman engaged in a sexual act. When BECKER quickly and shockingly moved away to avoid any further contact with him, Tony kept pushing the telephone in her face.

39. On multiple occasions Tony would summon BECKER to his office. Believing it was a work-related issue, BECKER would go to Tony's office. Once inside the office, Tony would tell BECKER to "come over here next to me," move BECKER's chair uncomfortably closer to him, and suggestively signal that he wanted BECKER next to him.

40. BECKER was forced to continuously deny Tony's requests and would ask, "What do you need Tony?". When it was apparent that she was not there for a work-related issue, BECKER would immediately leave Tony's office.

41. On one of the occasions when Tony summoned BECKER to his office, following the aforementioned pattern and chain of events, when BECKER was walking out of the office, Tony stated, "Relax, fuck the company". BECKER continued to exit the office stating that she had a lot of work to get done.

42. The pattern of inappropriate, lewd, and unwelcomed actions and comments continued until June 25, 2019 when BECKER was wrongfully terminated from her position as CNC Machines Supervisor.

43. BECKER was allegedly terminated because Tom Nemitz returned to the plant and was seen on the plant floor by B & A ownership. Despite numerous others, including Tony, being present when Mr. Nemitz was in the plant, BECKER was used as the scapegoat and was the only person fired for Mr. Nemitz' presence.

44. B&A's termination of BECKER was not as a result of her performance or for a rule violation, but due to improper discriminatory and illegal reasons. Specifically, B&A terminated BECKER as a result of her gender and in retaliation for reporting sexual harassment.

45. B & A treated similarly situated employees outside of BECKER's gender more favorably, including but not limited to Carlos Lorenzo and Eduardo (Antonio) Anzardo. Specifically,

   a. All male employees of B & A who were similarly situated to BECKER were not subjected to inappropriate sexual advances and physical groping;

   b. All male employees of B & A who were similarly situated to BECKER were not threatened with termination for refusing to engage in sexual acts with their supervisor;

   c. All male employees of B & A who were similarly situated to BECKER were not subjected to inappropriate, lewd, and unwelcomed words and actions;

   d. All male employees of B & A who were similarly situated to BECKER were not terminated from their jobs because of their gender.

### COUNT I – HOSTILE WORK ENVIRONMENT/SEXUAL HARASSMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

46. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

47. The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Sexual harassment is considered a form of unlawful sex discrimination.

48. B&A is an "employer" as defined by § 760.09(7) of the Florida Statutes.

49. BECKER is a female who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

50. During the course and scope of her employment with B&A, BECKER was subjected to unwelcomed sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature. On one occasion, BECKER's supervisor, Plant Manager, Jose Antonio Lorenzo ("Tony") physically and verbally assaulted and harassed BECKER advising her that if she did not acquiesce to his sexual advances, she would be fired.

51. On numerous other occasions, Tony made inappropriate, lewd, and unwelcomed sexual advances and comments towards BECKER, often in the presence of other B&A employees.

52. On one such occasion, Tony made an inappropriate, unwelcomed, and surprise physical contact of a sexual nature with BECKER from behind her while she was performing a normal function of her job.

53. BECKER never made any indications of wanting such sexual attention from her supervisor and absolutely refused to participate or engage her supervisor in such sexual attention. Instead, BECKER made complaints to B&A management regarding the sexual harassment she was experiencing in the workplace, yet nothing was done by management to address this conduct.

54. B&A management received information directly from BECKER's immediate supervisor, Tom Nemitz, of the inappropriate sexual conduct of the Plant Manager, Jose Antonio Lorenzo ("Tony"), yet B&A management chose not to address the information.

55. Notwithstanding the employees' statements, B&A management took no further or definitive action to resolve the sexual harassment in the workplace against BECKER and allowed it to continue until BECKER was wrongfully terminated.

56. The sexual harassment experienced by BECKER was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment. Specifically, BECKER felt uncomfortable in her daily interactions with her supervisor, Jose Antonio Lorenzo ("Tony"), and would try to limit or avoid all conversations with her supervisor. What is worse, when BECKER complained, she was met with harassment and threats by relatives of Tony who were also employees of B&A.

57. BECKER, who was the victim of the sexual assault, harassment, and retaliation, was subsequently terminated from her employment with B&A, while the person responsible for the sexual harassment and his relatives all retained their employment at B&A.

58. B&A's unlawful employment practices, complained of above, deprived BECKER of her statutory rights under the FCRA.

59. B&A and its employees/agents discriminated against BECKER with respect to her employment by subjecting BECKER to continued sexual harassment and by terminating her after she complained to management about the treatment she was being forced to endure.

60. B&A's actions are violations of the FCRA because B&A discriminated against BECKER in the loss of compensation, terms and conditions and/or privileges of BECKER's employment and thereby damaged her.

61. As a direct and proximate result of B&A's conduct and its employees' actions, BECKER has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had she not been unlawfully terminated.

62. What is more, the unlawful employment practices complained of above committed by B&A were willful, wanton, intentional and with malice or with reckless indifference to BECKER's statutorily protected rights, such that BECKER is entitled to punitive damages.

63. BECKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

**COUNT II – HOSTILE ENVIRONMENT/SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

64. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

65. Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e et seq.

66. The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

67.     BECKER is a female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

68.     During the course and scope of her employment with B&A, BECKER was subjected to unwelcome sexual harassment, including sexual advances, requests for sexual favors, and other conduct of a sexual nature.  On one occasion, BECKER's supervisor, Plant Manager, Jose Antonio Lorenzo ("Tony"), physically and verbally assaulted and harassed BECKER advising her that if she did not acquiesce to his sexual advances, she would be fired.

69.     On numerous other occasions, Tony would make inappropriate, lewd, and unwelcomed sexual advances and comments, at various times in the presence of other B&A employees.

70.     On one such occasion, Tony made an inappropriate, unwelcomed, and surprise physical contact of a sexual nature with BECKER from behind her while she was performing a normal function of her job.

71.     BECKER never made any indications of wanting such sexual attention from her supervisor and absolutely refused to participate or engage her supervisor in such sexual attention. Instead, BECKER made complaints to B&A management regarding the sexual harassment she was experiencing in the workplace, yet nothing was done by management to address this conduct.

72.     B&A management received information directly from BECKER's immediate supervisor, Tom Nemitz, of the inappropriate sexual conduct of the Plant Manager, Jose Antonio Lorenzo ("Tony"), yet B&A management chose not to address the information.

73.     Notwithstanding the employees' statements, B&A management took no further or definitive action to resolve the sexual harassment in the workplace against BECKER and allowed it to continue until BECKER was wrongfully terminated.

74. The sexual harassment experienced by BECKER was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment. Specifically, BECKER felt uncomfortable in her daily interactions with her supervisor, Jose Antonio Lorenzo ("Tony"), and would try to limit or avoid all conversations with her supervisor. What is worse, when BECKER complained, she was met with harassment and threats by relatives of Tony who were also employees of B&A.

75. BECKER, who was the victim of the sexual assault, harassment, and retaliation, was subsequently terminated from her employment with B&A, while the person responsible for the sexual harassment and his relatives all retained their employment at B&A.

76. B&A's actions are in violation of Title VII of the Civil Rights Act because B&A discriminated against BECKER with respect to the compensation, terms, conditions, and/or privileges of her employment by subjecting her to sexual harassment, causing her losses and thereby damaging her.

77. B&A knew or should have known about the discriminating actions against BECKER, as listed above, and B&A failed to take prompt remedial action in violation of Title VII of the Civil Rights Act.

78. As a direct and proximate result of B&A's conduct and its employees' actions, BECKER has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had she not been unlawfully terminated.

79. What is more, the unlawful employment practices complained of above committed by B&A were willful, wanton, intentional and with malice or with reckless indifference to BECKER's statutorily protected rights, such that BECKER is entitled to punitive damages.

80. BECKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII of the Civil Rights Act and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

## COUNT III – VIOLATION OF TITLE VII -
## GENDER DISCRIMINATION

81. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

82. BECKER is a member of a protected class of female citizens.

83. At all times necessary, BECKER was qualified to perform her duties as a machinist and CNC Machines Supervisor.

84. During the course of BECKER's employment with B & A, BECKER was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

85. The offensive and discriminatory conduct referred to in the General Allegations was offensive to BECKER and would be offensive to a reasonable person.

86. BECKER was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

87. Her superiors directed the conduct referred to in this Complaint to BECKER.

88. BECKER's termination constituted an adverse employment action against her which was causally related to BECKER's gender (female).

89. Similarly situated male employees were treated more favorably by BECKER's supervisors at B & A than BECKER. Specifically, the conduct endured by BECKER as referred to in the General Allegations of this Complaint was not faced by BECKER's male counterparts.

90. As a direct and proximate result of the foregoing, BECKER has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

91. Any alleged nondiscriminatory reason for this treatment of BECKER by B & A is a mere pretext for the actual reason for discriminating against her based on her gender.

92. BECKER has suffered damages on an on-going and continuous nature.

93. As a result of the deprivations of rights at the hands of B & A, BECKER has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT IV -VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT- GENDER DISCRIMINATION

94. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

95. At all times material hereto, B & A failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

96. BECKER is a member of a protected class of female citizens.

97. At all times necessary, BECKER was qualified to perform her duties as a machinist and CNC Machines Supervisor.

98. During the course of BECKER's employment with B & A, BECKER was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

99. The offensive and discriminatory conduct referred to in the General Allegations was offensive to BECKER and would be offensive to a reasonable person.

100. BECKER was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

101. Her superiors directed the conduct referred to in this Complaint to BECKER.

102. BECKER's termination constituted an adverse employment action against her which was causally related to BECKER's gender (female).

103. Similarly situated male employees were treated more favorably by BECKER's supervisors at B & A than BECKER. Specifically, the conduct endured by BECKER as referred to in the General Allegations of this Complaint was not faced by BECKER's male counterparts.

104. As a direct and proximate result of the foregoing, BECKER has suffered and continues to suffer embarrassment, humiliation, emotional distress and economic losses.

105. Any alleged nondiscriminatory reason for this treatment of BECKER by B & A is a mere pretext for the actual reason for discriminating against her based on her gender.

106. B & A's actions were malicious and were recklessly indifferent to BECKER's rights pursuant to Fla. Stat. § 760.10.

107. The aforementioned actions of B & A were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

## COUNT V – RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

108. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

109. The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because

that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

110. B&A is an "employer" as defined by § 760.09(7) of the Florida Statutes.

111. BECKER is a female who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

112. BECKER engaged in a statutorily protected expression, namely she and other employees on her behalf made complaints against the Plant Manager, Jose Antonio Lorenzo ("Tony"), for subjecting BECKER to sexual harassment, resulting in a hostile work environment.

113. Notwithstanding the employees' statements, B&A management took no further or definitive action to resolve the sexual harassment in the workplace and allowed it to continue until BECKER was wrongfully terminated.

114. A causal connection exists between the complaints to the owners and management of B&A made by BECKER and other employees on her behalf with regard to the sexual harassment which resulted in the hostile work environment (i.e. a statutorily protected expression) and the adverse employment action faced by BECKER, namely her termination.

115. B&A disciplined BECKER for pretextual reasons and ultimately terminated her as a result of her complaints of sexual harassment, resulting in a hostile work environment.

116. What is more, while BECKER, as the victim of the sexual assault, harassment, and retaliation, was subsequently terminated from her employment with B&A, the person responsible for the sexual harassment and his relatives all retained their employment at B&A.

117. As a direct and proximate result of B&A's conduct and its employees' actions, BECKER has suffered irreparable harm through her loss of gainful employment and through the

loss of valuable employment benefits, including insurance benefits which he would have continued to receive had she not been unlawfully terminated.

118. The unlawful employment practices complained of above committed by B&A were willful, wanton, intentional and with malice or with reckless indifference to BECKER's statutorily protected rights, such that BECKER is entitled to punitive damages.

119. BECKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT VI – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

120. Plaintiff BECKER incorporates the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

121. Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

122. BECKER is a female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

123. BECKER engaged in a statutorily protected expression, namely she and other employees on her behalf made complaints against the Plant Manager, Jose Antonio Lorenzo ("Tony"), for subjecting BECKER to sexual harassment, resulting in a hostile work environment.

124. Notwithstanding the employees' statements, B&A management took no further or definitive action to resolve the sexual harassment in the workplace and allowed it to continue until BECKER was wrongfully terminated.

125. A causal connection exists between the complaints to the owners and management of B&A made by BECKER and other employees on her behalf with regard to the sexual harassment which resulted in the hostile work environment (i.e. a statutorily protected expression) and the adverse employment action faced by BECKER, namely her termination.

126. B&A disciplined BECKER for pretextual reasons and ultimately terminated her as a result of her complaints of sexual harassment, resulting in a hostile work environment.

127. What is more, while BECKER, as the victim of the sexual assault, harassment, and retaliation, was subsequently terminated from her employment with B&A, the person responsible for the sexual harassment and his relatives all retained their employment at B&A.

128. As a direct and proximate result of B&A's conduct and its employees' actions, BECKER has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had she not been unlawfully terminated.

129. What is more, the unlawful employment practices complained of above committed by B&A were willful, wanton, intentional and with malice or with reckless indifference to BECKER's statutorily protected rights, such that BECKER is entitled to punitive damages.

130. BECKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, NINA BECKER, demands judgment against Defendant, B & A MANUFACTURING COMPANY, and requests the following relief:

1. Enter judgment in favor of BECKER for B & A's violations of the Title VII and the FCRA.

2. Award BECKER actual damages suffered;

3. Award back pay and value of lost employment benefits to BECKER;

4. Award front pay to BECKER for the years she would have worked absent B & A's discriminatory treatment;

5. Enter judgment in favor of BECKER for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress BECKER has suffered and continues to suffer;

6. Award BECKER punitive damages;

7. Award to BECKER all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. An injunction permanently enjoining B & A, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of gender; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff, NINA BECKER, demands a trial by jury on all issues so triable.

Dated February 17, 2021

        **Sconzo Law Office, P.A.**
        3825 PGA Boulevard, Suite 207
        Palm Beach Gardens, FL 33410
        Telephone: (561) 729-0940
        Facsimile: (561) 491-9459

        By: **/s/ Gregory S. Sconzo**
        GREGORY S. SCONZO, ESQUIRE
        ANDREA C. SCONZO, ESQUIRE
        Florida Bar No.: 0105578
        **Primary Email:** greg@sconzolawoffice.com
        **Primary Email:** andrea@sconzolawoffice.com
        **Secondary Email**: alexa@sconzolawoffice.com